**William GARRETT, Plaintiff,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 5–316.**

United States District Court
N. D. Texas,
Lubbock Division.

Aug. 13, 1968.

George A. Canon, Lubbock, Tex., for plaintiff.

Eldon B. Mahon, U. S. Atty., Dallas, Tex., Charles D. Cabaniss, Asst. U. S. Atty., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Claimant Garrett appeals from a final decision of the Secretary of Health, Education and Welfare denying his claim for a period of disability and for monthly disability insurance benefits under 42 U.S.C. § 423. Garrett, at the time he applied for the benefits in August, 1964, was over 60 years of age and had been employed most of his adult life as a brickmason and stonemason, sometimes doing his own contracting therefor. He had had an eighth grade education.

At the hearing of his case before the Department of Health, Education and Welfare Hearing Examiner on November 2, 1965, Garrett testified that he had developed cataracts on both eyes about two years prior to the time he applied for benefits and his sight had gradually worsened until he could no longer continue his work and also had to give up driving. He had an operation on the left eye in November, 1964. A letter from the surgeon, Dr. Weldon O. Murphy, dated January 5, 1965, states that the "postoperative course has been uneventful" (T.99), and a report from the same doctor dated May 20, 1965 says that "visual acuity in the operated left eye with correction was 20/60 and with a +1.50 added, was 20/20." (T.102) On August 2, 1965, the right eye was operated on and on September 16, 1965, according to the same doctor, Garrett had in that eye a "visual acuity of 20/30." T.111)

On the basis of this medical evidence, the Hearing Examiner opined that claimant "has not established inability to engage in any substantial gainful activity by reason of a medically determinable impairment which can be expected to result in death or be of long continued and indefinite duration, or * * * which can be expected to last for a con-

tinuous period of not less than 12 months." (T.12) In order to come within the scope of § 423 either before or after the 1965 amendments thereto, claimant was required to establish inability caused by such an impairment. The Examiner noted that "cataracts are remediable impairments, * * * that claimant had successful cataract extractions, and that his corrected visual acuity has been restored to 20/30, bilateral." "It is a matter of common knowledge that * * * the presence of corrected visual acuity of 20/30, bilateral, constitutes good visual acuity for most purposes including reading, writing, driving, walking and working." (T.12–13)

■ This case should be remanded for further evidence on the question of whether claimant was disabled between August, 1964 and September, 1965. It would seem that there is not any evidence, much less any "substantial evidence" in the record on which this court can affirm the Examiner's decision that claimant did not, during this time period, establish inability to engage in substantial gainful activity by reason of a medically determinable impairment which "can be expected to last for a continuous period of not less than 12 months." On the contrary, the available evidence would seem to indicate that at the time Garrett applied for benefits in August, 1964, and for over a year subsequent thereto, if not at the time of the hearing, he was suffering from just such an impairment. There are, however, no testimony and no reports at all on such relevant questions as: Would it have been advisable and feasible for claimant to have undergone surgery on both eyes at once, thereby presumably regaining visual acuity of 20/30, bilateral, at an earlier date than it was actually regained? I. e., did claimant deliberately postpone the second operation so that his impairment would last not less than 12 months? (This seems unlikely, especially in view of the fact that the 1965 amendment to § 423 had not yet been written into the Act at the time of the first operation in November, 1964.)

How likely was it that the cataract operations would be successful? Was Garrett advised by his physician not to do any more brick work or close work? The Examiner questioned claimant briefly on this point (T.46), but did not pursue the matter far enough and when claimant was about to quote what the doctor had told him about looking for work during the time between the two operations, the Examiner abruptly changed the subject by inquiring into claimant's capabilities at the date of the hearing. (T.46) But it would seem that his capabilities between August, 1964 and September, 1965 (when he was fitted with glasses for the right eye) are more relevant. What kind of work can one who has cataracts perform before they are removed and during the immediate postoperative months? The Examiner suggested that if claimant could not lay brick and stone himself (because he could not "point" and "level"), he could have been a foreman or supervisor. But it seems self-evident that one who cannot, because of poor vision, do a job himself cannot tell whether another person is doing the job satisfactorily. It was also suggested that claimant could find employment as a watchman or guard, but this type of work also obviously requires good vision, as pointed out by claimant in his affidavit. (T.120)

■ While it is true that claimant had the burden of proving his disability to engage in substantial gainful employment, "it does not follow that the court is bound to sustain a denial of disability benefits where the applicant has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer. * * * the sections of the statute [relating to burden of proof] relied on by the Government have no greater stature than the broad provision in * * * 42 U.S.C.A. § 405(g) that the reviewing court 'may at any time, on good cause shown, order additional evidence to be taken before the Secretary', a provision which seems to have been inserted for the very pur-

pose of dealing with such cases." Kerner v. Flemming, 283 F.2d 916 (2 Cir., 1960, opinion by Judge Friendly).

Whether claimant has continued to be entitled to disability benefits from October, 1965 (when his right eye was fitted with glasses) to the present is an entirely different question. The 1967 amendments to the Social Security Act restricted the coverage of § 423 so that now one is considered to be under a disability only if his impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful employment which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work" and "work which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." (This amendment is applicable to cases pending in the courts when the decision has not become final before January, 1968.) So, assuming arguendo that Garrett cannot return to his former employment, he still must prove that after his recovery from surgery on both eyes, there is no type of work even theoretically available to him. At the hearing, he, himself, stated that he didn't think he could build houses but that he might be able to build fireplaces. (T.53) Claimant's attorney says in his brief (p. 4) that it is a matter of "common knowledge" that the demand for such "beyond those built by General Contractors, is non-existent." Even if this particular type of work does not exist in claimant's region or in several other regions of the country, in the face of the admission that he is now able to do some kind of substantial work, he would seem to have removed himself from the coverage of § 423, as amended in 1967. One who can see well enough to build fireplaces could be, at the very least, an ele-

vator operator or timekeeper, and these are two of the occupations suggested by the Hearing Examiner.

Accordingly, this cause is remanded to the Secretary for further proceedings in accordance with the foregoing opinion.